J-A33024-16

2017 PA Super 110

| U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR THE PENNSYLVANIA HOUSING FINANCE AGENCY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| BRYAN J. WATTERS AND PROPOSED INTERVENER, DIANE WATTERS | |
| Appellants | No. 483 WDA 2016 |

Appeal from the Order Dated March 9, 2016
In the Court of Common Pleas of Erie County
Civil Division at No(s): 10516-14

BEFORE:  LAZARUS, J., SOLANO, J., and STRASSBURGER, J.[*]

OPINION BY SOLANO, J.:                    **FILED APRIL 19, 2017**

Appellants Bryan J. Watters ("Husband") and Diane Watters ("Wife") appeal from the order entered on March 9, 2016, denying their petition to strike or open a judgment against Husband in an action to foreclose on a mortgage and Wife's application for leave to intervene in that action.  We affirm.

On June 7, 2006, Husband signed a note and mortgage for $73,071 to purchase real property in Girard, Erie County ("the Property").  The original mortgagee was American Home Mortgage, which subsequently assigned the mortgage to the Pennsylvania Housing Finance Agency, which in turn assigned the mortgage to Appellee, U.S. Bank National Association ("Bank").

---

[*] Retired Senior Judge assigned to the Superior Court.

At the time he purchased the Property, Husband was married to Wife, but Wife was not a purchaser of the Property and her name was not placed on the deed. Husband and Wife deliberately chose not to include Wife as a party to the purchase or to the mortgage because she had a poor credit rating. N.T., 3/8/16, at 13-14; Trial Ct. Op., 6/8/16, at 1.

The trial court accurately detailed the subsequent facts and procedural history underlying this action, as follows:

> On April 16, 2013, [Husband] filed for divorce from [Wife. N.T. at 14.] After separating, [Husband] moved from the Property and [Wife] continued to reside there. *See* [*id.*]
>
> [Husband] failed to pay the mortgage payment due June 1, 2013 and defaulted on all subsequent installments. The [Bank] filed an action in mortgage foreclosure on February 28, 2014. [N.T. at 14.] On March 10, 2014, [Wife] was served with a copy of the Complaint as an occupant of the Property secured by the Mortgage. [*Id.*[1] Husband] was personally served with the Complaint on March 13, 2014. [*Id.*]
>
> On April 11, 2014, notices that [Husband] must vacate or pay within 10 days were mailed to the Property and to [Husband] at his new address. [Bank's] Brief in Opposition to Petition, p.2. When no action was taken, the [Bank] filed a Praecipe for a Default Judgment against [Husband on April 25, 2014, and notice was sent to Husband on April 28, 2014.]
>
> A Sheriff's sale was scheduled for July 25, 2014. A copy of the Notice of Sale was mailed to [Wife] at the [P]roperty address. [N.T. at 15. Wife] received the Notice of Sale and attempted to work with the [B]ank to stave off the foreclosure. [*Id.*] As a result of [Wife]'s actions, the Sheriff's sale was continued to August 22, 2014. [*Id.*] The Sheriff's sale was

---

[1] Appellants admit that "[t]he parties were separated but not divorced at that time." Appellants' Brief at 6 n.2.

postponed a second time to October 17, 2014 after the [Bank] became aware [Wife] was attempting to obtain financing to purchase the home from [Husband]. [*Id.* at 15-16.]

The Sheriff's sale occurred on October 17, 2014 and the [Bank] was the successful bidder. [N.T. at 15-16.] A deed was recorded November 10, 2014 transferring title to the [Bank] and extinguishing [Husband's] ownership rights. [*Id.* at 16.]

Over one year later, on December 3, 2015, the Appellants filed a Petition to Open or Strike Default Judgment, Set Aside Sheriff's [S]ale and Application for Leave to Intervene ("Petition"). [In the Petition, Appellants alleged that Wife held an equitable interest in the Property as a result of the divorce proceeding and hence was a party required to be named in the action under Rule 1144 of the Rules of Civil Procedure, and, as she was not named as a party nor served by the Bank, the trial court lacked subject matter jurisdiction and had been powerless to enter the default judgment. Petition at ¶¶ 26-27, 32-33, *ad damnum* clause.] The [Bank] filed an Answer on January 8, 2016. After submission of briefs and oral argument, the Petition was denied *en toto* by Order dated March 9, 2016.

Trial Ct. Op., 6/8/16, at 1-3; *see also id.* at 7.[2]

The trial court denied Wife's petition to intervene because it concluded

that Wife was not a "real owner" of the Property who was required to be

_____

[2] We note as an aside that because the parties deliberately kept Wife's name off of the deed, this case is not governed by in *Klebach v. Mellon Bank, N.A.*, 565 A.2d 448, 450 (Pa. Super. 1989), and *Frantz v. Frantz*, 972 A.2d 525, 527 (Pa. Super. 2008), *appeal denied*, 983 A.2d 728 (Pa. 2009), which hold that a creditor of one spouse may not foreclose on property held by a husband and wife as tenants by the entireties. Those decisions also preclude execution on entireties property once a divorce action is filed because the property then becomes the subject of litigation and under the court's control — in *custodia legis* — making it exempt from execution. **See** *Klebach*, 565 A.2d at 452; *Frantz*, 972 A.2d at 528. The parties have not raised an in *custodia legis* issue on the facts here, and we therefore do not opine on that question. **See generally** 23 Pa.C.S. § 3501(a)(7); **Kronz v. Kronz**, 574 A.2d 91, 94 (Pa. Super. 1990).

named as a party under Rule 1144 of the Rules of Civil Procedure.  Pa.R.C.P. 1141-1150 govern actions in mortgage foreclosure.  Rule 1144(a)(3) states: "The plaintiff shall name as defendants . . . the real owner of the property, or if the real owner is unknown, the grantee in the last recorded deed."  The court held that a "real owner" is "the original mortgagor or one who takes title for the original mortgagor" and that "[i]ndividuals who have an equitable right to the subject property or those who claim title antagonistic to the mortgagor are not real owners required to be named as defendants." Trial Ct. Op., 6/8/16, at 3-4.  Because Wife was not named in the mortgage, note, or deed, she "had at most an equitable interest in the property because it was marital property and the divorce was not yet finalized."  *Id.* at 4.  Therefore, the court held, her interest was insufficient to make Wife a real owner for purposes of Rule 1144.[3]

---

[3] In Wife's Petition to the trial court, she also alleged that she was an indispensable party who had to be joined as a defendant under Rule 2227 of the Rules of Civil Procedure, which deals with compulsory joinder.  The trial court rejected this argument, because, as a non-party to the mortgage, her joinder was not needed to resolve the mortgage foreclosure issues.  *See* Trial Ct. Op., 6/8/16, at 1-5.  Wife did not preserve this issue in her statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), and she does not now raise this issue before this Court. Nevertheless, because failure to join an indispensable party implicates the court's jurisdiction to provide complete relief, *Sabella v. Appalachian Dev. Corp.*, 103 A.3d 83, 90 (Pa. Super. 2014), *appeal denied*, 114 A.3d 417 (Pa. 2015), we note our agreement with the trial court's ruling.  An indispensable party must have a right or interest in the claim that may be affected by disposition of the lawsuit and is essential to the merits of the suit, so that justice may not be afforded without violating due process if the

*(Footnote Continued Next Page)*

The trial court held that even if Wife had been required to be named as a defendant in the action, the fact that she received actual notice of the action by personal service of the complaint on her as the resident of the Property enabled her to participate in the action. If she wished to be formally named as a party, she then could have sought to intervene before the sheriff's sale occurred, but she did not do so. Instead, she did not seek to intervene until over a year later, and her application was untimely. Trial Ct. Op., 6/8/16, at 7.

The trial court denied the petition to open the default judgment because the petition was not filed until 584 days after notice of the default was sent to defendant Husband and therefore was untimely; Husband provided no reason for the delay. Trial Ct. Op., 6/8/16, at 7-8. Husband also failed to state a meritorious defense to the action. *Id.*

Husband and Wife appealed on April 5, 2016, and raise the following issues for our review:

> I. Whether any person, other than the holder of a judgment lien or mortgage, who holds a record interest in real property, prior to the commencement of a foreclosure action and who must be joined in a conveyance of real property [before it] may be delivered to the purchaser of the real property, is a "real

*(Footnote Continued)* ―――――――――

party remains absent. *CRY, Inc. v. Mill Service, Inc.*, 640 A.2d 372, 375-76 (Pa. 1994). Although Wife claims an equitable interest in the property as a result of a pending divorce proceeding, she does not own the property and had no interest in the mortgage or mortgage loan, to which she was not a party and on which she had no liability. Therefore, her presence was not required to resolve the foreclosure action.

owner" of the property required to be joined as a Defendant in a foreclosure proceeding against the property pursuant to Rule 1144(a)(3) of the Pennsylvania Rules of Civil Procedure.

II.    Whether the term "real owner" of the property in Rule 1144(a)(3) of the Pennsylvania Rules of Civil Procedure is limited to the record owner of property.

III.    Whether a spouse whose name is not included in [a] recorded deed to property becomes a "real owner" of property required to be named as a defendant in a mortgage foreclosure against the property under Rule 1144(a)(3) of the Pennsylvania Rules of Civil Procedure when prior to the foreclosure, the spouse becomes entitled to statutory right of equitable division of marital property because of the commencement of an action in divorce by or against that spouse.

IV.    Whether the Petition to Open or Strike a Default Judgment and set aside a Sheriff's Sale of real property was filed on a timely basis.

V.    Whether the Application to Intervene filed by a person who was not made a party of a foreclosure action, but who contends she is required to be made a party defendant and to be served with process by the Sheriff should be granted.

VI.    Whether actual notice of a proceeding by a non-party to the action instead of formal service of process is sufficient notice of the action to a person required to have been named as a party defendant to the proceeding.

Appellants' Brief at 4-5.

## Denial of Wife's Petition To Intervene

"Whether to allow intervention is a matter vested in the discretion of the trial court and the court's decision will not be disturbed on appeal absent a manifest abuse of its discretion." *Johnson v. Tele-Media Co. of McKean Cty.*, 90 A.3d 736, 739 (Pa. Super. 2014).

The trial court's main reason for denying Wife's petition to intervene was its conclusion that Wife was not a "real owner of the property" who had to be named as a defendant under Rule 1144(a)(3). Appellants' first three issues challenge that holding.

Appellants contend that Wife is a "real owner" who was required to be joined because she had an equitable interest in the Property pursuant to the Divorce Code. That statute states that "all property acquired by either party during the marriage" is "marital property," 23 Pa.C.S. § 3501(a), and that such property shall be equitably divided by the court if a request to do so is made in a divorce proceeding, *id.* § 3502(a). **See** Appellants' Brief at 7, 12-14, 16.

This Court has never addressed whether an individual with a marital interest in real property qualifies as a "real owner" under Rule 1144(a)(3). The mortgage foreclosure rules were adopted in 1949 to replace statutes governing proceedings by *scire facias*[4] for the enforcement of a mortgage debt. Under the *scire facias* statute, the plaintiff in a foreclosure action was required to file "an affidavit setting forth to the best of his knowledge, information, and belief, who are real owners of the land charged, and that all such persons shall be made parties to the writ, and served according to its

---

[4] In this context, *scire facias* is defined as a "writ ordering a defaulting mortgagor to show cause why the mortgage should not be foreclosed and the property sold in execution." Black's Law Dictionary (10th ed. 2014).

provisions." ***Orient Bldg. & Loan Ass'n v. Gould***, 86 A. 863, 863 (Pa. 1913). The Supreme Court construed a "real owner" (sometimes referred to as a "terre-tenant") under the statute to mean "the real or present owner of the title by and under which the mortgagor claimed the land at the time he assumed to mortgage it." ***Id.*** at 864; ***see also Commonwealth Trust Co. v. Harkins***, 167 A. 278, 280-81 (Pa. 1933) ("terre-tenant" must be not only in actual possession of property, but also subject to encumbrance). The 1949 mortgage foreclosure rules replaced the requirement to file an affidavit listing the "real owners" with the statement in Rule 1144(a)(3) that a complaint in mortgage foreclosure must name as a defendant "the real owner of the property." Thereafter, cases interpreting "real owner" did so with reference to decisions under the *scire facias* statute. ***See, e.g.***, ***Bank of Pa. v. G/N Enters., Inc***., 463 A.2d 4, 6 (Pa. Super. 1983) (citing cases decided both before and after 1949); ***see also Levitt v. Patrick***, 976 A.2d 581, 591 (Pa. Super. 2009) (quoting ***Bank of Pa.*** with approval).

In 1959, the Supreme Court adopted a trial court decision that applied the "real owner" requirement in Rule 1144 to the holder of an equitable interest by looking to the meaning of a "real owner" under the *scire facias* statute. ***Bradley v. Price***, 152 A.2d 904, 909 (Pa. 1959) (*per curiam*) (affirming on basis of opinion at 17 Pa. D. & C.2d 368 (C.P. Del. 1958)). The issue in ***Bradley*** was whether persons purchasing property from the mortgagor under an unrecorded contract of sale were "real owners" under

Rule 1144. The purchasers argued that because they "held an equitable title" to the property, they "were 'real owners' in the same sense that a record title owner was, and therefore had the same rights to notice of a sheriff's sale" of the property. 17 Pa. D. & C.2d at 377.[5] The court disagreed, because "'real owner' means the present owner of the title which the mortgagor owned when he mortgaged the premises to the mortgagee by executing and delivering to said mortgagee the mortgage which is the mortgage under which the present foreclosure proceedings were instituted." *Bradley*, 152 A.2d at 909 (emphasis omitted) (quoting 17 Pa. D. & C.2d at 377, which cited *Orient Bldg.*, 86 A. at 863-64)).

---

[5] The persons who must be served with notice of a sheriff's sale are not necessarily the same as those who must be served with a complaint in a mortgage foreclosure action. Though all persons who must be served with the complaint must also be served with notice of the sheriff's sale, the converse is not always true. As one court has observed:

> [T]he Pennsylvania rules of procedure require that notice of an impending foreclosure sale be served upon all lienholders so that they may protect their interests at the foreclosure sale (by bidding, for example). Pa.R.Civ.P. 3129.1. *See, e.g.*, *Beneficial Mut. Sav. Bank v. Murray*, 30 D. & C.3d 115 (Del. Co. 1984). . . . Conversely, though, such lienholders need not, under state law, be served with the foreclosure complaint, or be made a party to the complaint. Pa.R.Civ.P. 1144.

*In re Antell*, 155 B.R. 921, 932 (Bankr. E.D. Pa. 1992) (mem.). As a federal opinion, *Antell* is not precedential here, but we reference it for its persuasive value. *See In re McKinney*, 67 A.3d 824, 832 n.14 (Pa. Super. 2013).

We have found no other reported appellate decisions dealing with whether the holder of an equitable interest in mortgaged property is a "real owner" under Rule 1144. In the absence of contrary case law, we hold that the trial court was correct in limiting the definition of "real owner" to those who have liability on the mortgage and that Wife therefore was not a "real owner" under that term.

We must interpret Rule 1144 to effectuate the intention of the Supreme Court when it promulgated the rule. Pa.R.C.P. 127(a). In doing so, we presume that "if the Supreme Court has construed the language of a rule or statute, the Supreme Court in promulgating a rule on the same subject matter which employs the same language intends the same construction to be placed upon such language." Pa.R.C.P. 128(d). Here, the Supreme Court employed the language of the *scire facias* statute when it adopted Rule 1144(a)(3), and it therefore is appropriate to give the term "real owner" in that rule the same meaning as it had been given by the Supreme Court under that legislation. We also note that where, as here, the words of a rule are not explicit in defining their terms, we may interpret the rule by looking to "prior practice, if any, including other rules and Acts of Assembly upon the same or similar subjects." Pa.R.C.P. 127(b)(5).[6]

---

[6] We recently observed:

*(Footnote Continued Next Page)*

Construing Rule 1144(a)(3) in this manner, we hold that its reference to a "real owner of the property" does not encompass a spouse having a marital interest under the Divorce Code.[7]

The parties agree that Wife was not named on the mortgage, note, or deed.  N.T. at 13-14; *see also* Trial Ct. Op., 6/8/16, at 1, 4.  The parties also concur that at the time of the foreclosure proceedings, Appellants' divorce was not yet finalized and that Wife therefore had only an equitable interest in the Property.  Appellants' Brief at 6 n.2, 7 & n.3, 9 (citing 23 Pa.C.S. § 3501(a)); Bank's Brief at 4, 8; *see also* N.T. at 14; Trial Ct. Op., 6/8/16, at 1, 4.  As the trial court stated,

> [Wife] was not responsible for [the] mortgage payments and was not liable if the payments were in default.  Thus, [her]

*(Footnote Continued)* ————————

> The Rules of Civil Procedure governing foreclosure actions were drafted by our Supreme Court and adopted in 1949, but they have a statutory basis dating back to 1705.  **See** Kenneth E. Gray, *Definition; conformity to civil action*, *in* 15 West's Pennsylvania Practice, § 2:1 (Thomson Reuters, 3d ed., Dec. 2016 Update).  Thus, despite its current embodiment in the Rules, the procedure in connection with the foreclosure of mortgages has been held to be "purely statutory," so that its requirements must be stringently followed. ***Peoples Nat'l Bank of Lebanon v. Noble***, 487 A.2d 912, 915 (Pa. Super. 1985).

***Nicholas v. Hofmann***, ___ A.3d ___, 2017 WL 1102790, *15 (Pa. Super. 2017) (No. 2567 EDA 2015).

[7] Rule 1144 was promulgated almost 40 years before the Divorce Code was enacted in 1990, and it therefore is no surprise that it does not specifically address this question.  We respectfully suggest that the Supreme Court's Civil Procedural Rules Committee may wish to examine the scope of Rule 1144(a)(3) in light of changes to the law since the rule was adopted.

interest in the property was not linked to the disposition of the mortgage foreclosure action . . . . Stated differently, if [Wife] was joined as a defendant, she had a successful defense by simply averring that she was not a party to the mortgage transaction and therefore not liable under the terms of the mortgage.

*Id.* at 5. For this reason, Wife was not a "real owner" for purposes of the mortgage foreclosure action, and the trial court correctly held that the Bank was not required to name her as a defendant to the foreclosure action at issue. *See* Pa.R.C.P. 1144(a). As a result, Appellants' first through third issues are meritless.[8]

In their fifth issue, Appellants argue more generally that, regardless of whether Wife qualified as a "real owner," the trial court abused its discretion in denying Wife's application to intervene. Appellants' Brief at 5 ¶ V & 20. We disagree. According to the record, Wife did not file her application to intervene during the "pendency" of the mortgage foreclosure action. Rather, her formal request to intervene was filed 584 days after the default judgment had been taken. As we held in *Fin. Freedom, SFC v. Cooper*, 21 A.3d 122 (Pa. Super. 2011) —

---

[8] In their sixth issue, Appellants complain that, even though Wife received actual notice of the foreclosure action at the address of the Property where she was residing, she did not receive formal service of process. She asserts that the "[a]ctual notice" that she received was "not sufficient notice of the action to a person required to have been named as a party defendant to the proceeding." Appellants' Brief at 5 ¶ VI & 22. Because Wife was not required to be named as a party under Rule 1144, there was no requirement to serve her with process, and we therefore do not reach Appellants' sixth issue.

> To petition the court to intervene after a matter has been finally resolved is not allowed by our Rules of Civil Procedure. It is only *during the pendency* of an action that the court may allow intervention. Pa.R.C.P. 2327. An action is "pending", according to Black's Law Dictionary (5th Ed.), when it is:
>
> > begun, but not yet completed; during; before the conclusion of; prior to the completion of; unsettled; undetermined; in process of settlement or adjustment. Thus, an action or suit is "pending" from its inception until the rendition of final judgment.

21 A.3d at 1231 (emphasis in original; citation omitted). Because Wife did not seek to intervene until after the mortgage foreclosure action no longer was pending, the trial court acted properly in denying her application to intervene, and Appellants' fifth issue is without merit.

### Denial of Petition to Open or Strike the Default Judgment

Appellants' remaining issue is whether the trial court erred in declining to open or strike the default judgment because Appellants delayed unreasonably in filing their petition seeking that relief. *See* Appellants' Brief at 4 ¶ IV & 18-19.

A petition to strike a judgment and a petition to open a judgment are separate and distinct remedies and not interchangeable. *Manor Bldg. Corp. v. Manor Complex Assocs., Ltd.*, 645 A.2d 843, 845 n.2 (Pa. Super. 1994) (*en banc*); *Neducsin v. Caplan*, 121 A.3d 498, 504-05 (Pa. Super. 2015), *appeal denied*, 131 A.3d 492 (Pa. 2016). A petition to open a judgment seeks to re-open a case following a default judgment in order to

assert a meritorious defense; a motion to strike a judgment "is the remedy sought by one who complains of fatal irregularities appearing on the face of the record." *Cameron v. Great Atl. & Pac. Tea Co.*, 266 A.2d 715, 717 (Pa. 1970); *accord, N. Forests II, Inc. v. Keta Realty Co.*, 130 A.3d 19, 28 (Pa. Super. 2015), *appeal denied*, No. 197 MAL 2016, 2016 WL 5815288 (Pa., Oct. 5, 2016).

Although Appellants' petition raised procedural defects attending the default judgment (mainly, the failure to make Wife a defendant), Appellants' ultimate objective was to present grounds for avoiding foreclosure. Accordingly, both the parties and the trial court analyzed the issues presented under the standards applicable to a petition to open a judgment, not to strike it. Trial Ct. Op. 6/8/16, at 7-8; Appellants' Brief at 18-19; Bank's Brief at 13-15. Accordingly, we address the issue under those standards as well,[9] noting that —

> A petition to open a default judgment is an appeal to the equitable powers of the court. The decision to grant or deny a petition to open a default judgment is within the sound discretion of the trial court, and we will not overturn that decision absent a manifest abuse of discretion or error of law.

---

[9] Even if the petition were considered under the standard of a petition to strike a judgment, it still was properly denied. A petition to strike a default judgment presents us with a question of law; consequently, our standard of review is *de novo* and our scope of review is plenary. *Oswald v. WB Pub. Square Assocs., LLC*, 80 A.3d 790, 793 (Pa. Super. 2013). The procedural defects of which Appellants complain all relate to the failure to join or serve Wife in the foreclosure action. We have rejected Appellants' position on that issue in the preceding portion of this opinion.

*Smith v. Morrell Beer Distributors, Inc.*, 29 A.3d 23, 25 (Pa. Super. 2011).

"In general, a default judgment may be opened when the moving party establishes three requirements: (1) a prompt filing of a petition to open the default judgment; (2) a meritorious defense; and (3) a reasonable excuse or explanation for its failure to file a responsive pleading." *Smith*, 29 A.3d at 25 (citation omitted). If a petition to open a default judgment fails to fulfill any one prong of this test, then the petition must be denied. *Myers v. Wells Fargo Bank, N.A.*, 986 A.2d 171, 178 (Pa. Super. 2009). *See McFarland v. Witham*, 544 A.2d 929, 930-31 (Pa. 1988) (holding that failure to provide justifiable explanation for failing to respond to complaint in a timely manner was sufficient basis to deny petition); *McCoy v. Pub. Acceptance Corp.*, 305 A.2d 698, 700 (Pa. 1973) (holding that because appellant did not adequately explain the failure to answer the complaint, the trial court was justified in refusing to open the judgment); *US Bank N.A. v. Mallory*, 982 A.2d 986, 996-97 (Pa. Super. 2009) (affirming denial of petition to open without needing to analyze third prong of test).

In their brief to this Court, Appellants challenge only the trial court's determination that their petition was not promptly filed. Appellants' Brief at 4 ¶ IV & 18-19. With regard to this timeliness requirement:

> The timeliness of a petition to open a judgment is measured from the date that notice of the entry of the default judgment is received. The law does not establish a specific time period

within which a petition to open a judgment must be filed to qualify as timeliness. Instead, the court must consider the length of time between discovery of the entry of the default judgment and the reason for delay. . . . In cases where the appellate courts have found a "prompt" and timely filing of the petition to open a default judgment, the period of delay has normally been less than one month. **See Duckson v. Wee Wheelers, Inc.**, 423 Pa. Super. 251, 620 A.2d 1206 (1993) (one day is timely); **Alba v. Urology Associates of Kingston**, 409 Pa. Super. 406, 598 A.2d 57 (1991) (fourteen days is timely); **Fink v. General Accident Ins. Co.**, 406 Pa. Super. 294, 594 A.2d 345 (1991) (period of five days is timely).

**Myers**, 986 A.2d at 176 (quoted citations omitted).

Here, the default judgment was entered on April 25, 2014, and notice thereof was sent to Husband on April 28, 2014. Appellants waited until December 3, 2015 to file the petition to open — more than 19 months after the notice was sent. The trial court did not err in finding that this delay was too long. Because Appellants' petition was not "prompt," we agree with the trial court that it failed the first requirement to open a default judgment. **See Smith**, 29 A.3d at 25.[10]

_____

[10] Additionally, Appellants offered no "reason for delay" and the trial court could not discern one. **See Myers**, 986 A.2d at 176. As the trial court explained, Appellants were "fully aware" that Wife was not joined as a defendant as soon as Husband was served with the notice of the judgment, and they knew that Wife "was attempting to purchase the property from [Husband]." Trial Ct. Op., 6/8/16, at 8. If they believed these facts warranted opening the default judgment, no good reason for their delay in filing their motion is apparent in the record.

As Appellants failed to satisfy all of the requirements for a petition to open, the trial court did not err in denying their petition. ***See Myers***, 986 A.2d at 178.

## Conclusion

For the foregoing reasons, the trial court's denial of Wife's application for leave to intervene and of Appellants' petition to strike or open the default judgment were proper.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  4/19/2017